Timothy C. Rote
24790 SW Big Fir Rd.
West Linn, OR 97068
Phone: (503) 702-7225
E-Mail: timothy.rote@gmail.com
*Pro Se* Plaintiff

Case: 1:19−cv−01299   JURY DEMAND
Assigned To : Contreras, Rudolph
Assign. Date : 5/2/2019
Description: Pro Se Gen. Civ. (F−DECK)

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY ROTE,<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, UNITED STATES DEPARTMENT OF JUSTICE, OREGON JUDICIAL DEPARTMENT, OREGON STATE BAR and PROFESSIONAL LIABILITY FUND, COLORADO JUDICIAL DEPARTMENT, THE HON. ROBERT KUGLER, ARBITRATOR WILLIAM B. CROW, THE HON. PAUL PAPAK, THE HON. ELIZABETH WEISHAUPL,THE HON. ROBERT HERNDON,THE HON. JAMES EGAN, BILLY WILLIAMS (in his official capacity as U.S. Attorney and chief law official in Oregon), CAROL BERNICK (in her official capacity as CEO of the OSBPLF), THE HON. SUSIE NORBY and JOHN DOES (1-5), *et al.,*<br><br>　　　Defendants. | Case No.:<br><br>CIVIL RIGHTS COMPLAINT:<br><br>42 U.S.C. § 1983: FIRST, FIFTH AND FOURTEENTH AMENDMENTS;<br><br>42 U.S.C. § 1985: CONSPIRACY;<br><br>28 U.S.C. § 2201 AND § 2202: OTHER RELIEF;<br><br>OREGON CONSTITUTION ARTICLE I, §8, §10 AND §20;<br><br>COMMON LAW TORTS<br><br>JURY TRIAL REQUESTED |


RECEIVED
Mail Room
MAY - 2 2019
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTION RELIEF**

PAGE 1.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Plaintiff Timothy Rote brings this action for economic, noneconomic and punitive damages and for declaratory and injunction for relief for the defendants abridging the plaintiff's First, Fifth and Fourteenth Amendment rights of the United States Constitution and Oregon Constitution. As grounds therefor, plaintiff alleges as follows:

## INTRODUCTION

1. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges the deprivation of rights guaranteed to him by the First, Fifth and Fourteenth Amendments to the United States Constitution and Oregon Constitution Article I, §8, §10 and §20.

## VENUE AND JURISDICTION

2. This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question and Defendant United States), 28 U.S.C. § 2201 (creation of a remedy), and 28 U.S.C. § 2202 (further relief) as this action arises under the laws of the United States.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Defendants are residents of multiple States and the District of Columbia, the due process violations occurred in Oregon, New Jersey and Colorado and the United States is a defendant for acts committed in New Jersey, Colorado and Oregon.

## PARTIES

4. Plaintiff Timothy Rote (Rote) is a citizen of the United States and a resident of the state of Oregon.

5. Defendant Committee on Judicial Conduct and Disability of the Judicial Conference of the United States ("the Review Committee") is a standing committee established by the Judicial Conference of the United States ("the Judicial Conference") to review orders and actions of the

PAGE 2.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Judicial Councils of the U.S. Circuit Courts of Appeal regarding complaints against judges and judicial discipline under the Act.  The Review Committee derives its authority from sections 331 and 357 of the Act, and from Rule 21 of the Rules for Judicial Conduct and Judicial-Disability Proceedings.

6.   Defendant United States Department of Justice, also known as the Justice Department, is a federal executive department of the U.S. government, responsible for the enforcement of the law and administration of justice in the United States.

7.   Defendant Oregon Judicial Department is the judicial branch of government of the state of Oregon in the United States. The chief executive of the branch is the Chief Justice of the Oregon Supreme Court.

8.   Defendant Oregon State Bar is a government agency in the U.S. state of Oregon. Founded in 1890 as the private Oregon Bar Association, it became a public entity in 1935 that regulates the legal profession. The public corporation is part of the Oregon Judicial Department. Lawyers are required to join the OSB in order to practice law in Oregon.

9.   Defendant Oregon State Bar Professional Liability Fund while separately run operates under the umbrella of the Oregon State Bar. The Oregon State Bar Board of Governors created the Professional Liability Fund in 1977 pursuant to state statute (ORS 9.080) and with approval of the membership. The PLF first began operation on July 1, 1978, and has been the mandatory provider of primary malpractice coverage for Oregon lawyers since that date.

10. Defendant Colorado Judicial Department is the Judicial Branch of the State of Colorado, is established and authorized by Article VI of the Colorado Constitution as well as the law of Colorado.

11. Defendant Robert B. Kugler is a Senior United States District Judge of the United States District Court for the District of New Jersey and also serving as a Judge on the United States Foreign Intelligence Surveillance Court.

12. Defendant William B. Crow is retired attorney who was the arbitrator in a case adjudicated in Oregon. Crow was, during the relevant period of violations to due process, Chairman of the Disciplinary Board of the Oregon State Bar Association. Crow was a partner in the law firm of Schwabe Williamson.

13. Defendant Paul J. Papak is a federal magistrate judge on the United States District Court for the District of Oregon. He was first appointed to this position on September 19, 2005, and his current term will expire on September 18, 2021.

14. Defendant Elizabeth A. Weishaupl is a district court judge in Arapahoe County for the 18th JD. She has been in private practice, an Assistant Attorney General for the State of Colorado, and an Assistant U.S. Attorney. She was appointed to the bench in 2008 and has presided over criminal, civil, domestic, probate and juvenile matters since that time.

15. Defendant Robert Herndon was the Chief Judge in the Clackamas County Circuit in Oregon. Herndon joined the Clackamas County Circuit Court in 1997, has retired from the bench and practices law in Oregon.

16. Defendant James C. Egan is the Chief Judge of the Oregon Court of Appeals. The Oregon Court of Appeals is the state intermediate appellate court in the State of Oregon. Part of the Oregon Judicial Department, it has thirteen judges and is located in Salem, Oregon. Prior to be appointed the Oregon Judiciary, Egan practiced law in Albany Oregon specializing in employment law.

17. Defendant Billy J. Williams is United States Attorney for the District of Oregon, effective on December 12, 2015. Billy Williams has served as the Acting United States Attorney, for the District of Oregon since May of 2015.  He has been with the U.S. Attorney's Office since October of 2000.  Prior to his role as Acting United States Attorney, he served as the First Assistant, Chief of the Criminal Division and Chief of the Violent Crimes Unit.

18. Defendant Susie L. Norby is a judge on the Clackamas County Circuit Court in Oregon. The court has jurisdiction over Clackamas County and is located within the 5th Judicial District.

19. Defendant Carol Bernick is the Chief Executive Officer of the Oregon State Bar Professional Liability Fund (PLF). She is the recipient of the Peter Perlman Service Award from the Litigation Counsel of America and a Fellow in the College of Labor & Employment Lawyers.  She previously was a member of the board of the Multnomah Bar Association, where she chaired the Judicial Selection Committee and to this day exercises power and influence over judicial appointments and due process.

## STATEMENT OF FACTS

20. In 2001 The Hon. Robert E. Jones presided over a case in which plaintiff Sean Jones brought an action for breach of contract and FCRA violations against a company owned by Rote. Sean Jones was terminated for intercepting, opening and responding to Rote's personal mail, a federal crime. Jones did not refute the criminal conduct.

21. Upon the defense resting, the court instructed the jury and in a last minute change to the jury instructions the court effectively vitiated the defendant's affirmative defenses and counterclaims.

22. The jury returned with a small verdict in favor the plaintiff.

23. Shortly thereafter plaintiff Sean Jones alleged the Hon. Robert E. Jones was a family member.

24. Rote responded by asking the Judge via letter to recuse himself from post-verdict jurisdiction and Judge Jones did so with fanfare. The hearing on recusal will be referred to hereafter as the "Jones Transcript." There is little information supporting a conclusion that the subsequent chain of civil rights violations were designed and executed by Judge Jones, but it is abundantly clear that the defendants consider the publishing of the Jones family relationship worthy of punishment. **(The First Act)**. Plaintiff does not believe Judge Jones was involved with these civil right violations, but it is also abundantly clear that Judge Jones had knowledge of the transcripts being filed, knew they were being used to abridge due process and did nothing to stop the abuse.

25. Post judgment jurisdiction was transferred to Multnomah County Oregon and Rote had his company pay the judgment soon thereafter. Opposing counsel was suspended from the practice of law shortly thereafter for abuse of process, which Rote's company encountered in a fraudulent garnishment.

26. In 2003, Max Zweizig, an employee of a different company (owned by Rote) conspired with his girlfriend Sandra Ware (Rutgers Law School graduate) to perpetrate a fraudulent employment claim against Rote and the employer Northwest Direct ("NDT")..

27. As part of that scheme, Zweizig destroyed and removed programming code critical to his employer over a six month period of time. When the time was ripe and the programming was erased, hard drives overwritten, etc., processed data and reports withheld from clients, Zweizig and Ware attempted to extort a substantial raise from Rote.

28. Rote rejected the extortion attempt and upon Zweizig filing data due clients, Zweizig was given notice. It appeared at that point that Zweizig had been under some pressure and Rote sought to get Zweizig into counseling and to retrieve from him the critical programming code that Zweizig withheld.

29. Initially Zweizig responded well, but then refused to turn over the programming, instead choosing to file a complaint (three weeks after being given notice by Rote) with the Oregon Department of Justice (ODJ) and Lane County District Attorney claiming his employer was over-billing clients.

30. Defendant and then attorney James Egan filed that complaint on behalf of Zweizig, without a scintilla of evidence, after talking to Zweizig's NJ attorney. Later Egan would reveal that he did not know Sandra Ware was Zweizig's girlfriend.

31. The ODJ opened an investigation. Evidence was requested. No evidence was provided and the investigation was closed down.

32. Zweizig also filed with Rote a spreadsheet as the sole piece of evidence. Zweizig claimed to have received the spreadsheet via email, but no such email was ever provided.

33. Rote investigated, found the spreadsheet to be a fabrication by Zweizig, no clients were identified, there were hourly adjustments but Rote's company rarely billed by the hour, no one corroborated the spreadsheet, and the amount in question was nominal $400 (in a month in which the employer billed $400,000).

34. Zweizig last day followed soon thereafter, Rote refusing to hire him back but still offering to pay for Zweizig to get the mental health counseling he needed if he turned over the programming. Zweizig refused.

PAGE 7.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

35. After Zweizig's last day, Rote's company shut down for 10 days as the programming was recreated, the shutdown displacing more than 150 employees.

36. In 2004 Zweizig filed a complaint in New Jersey state court for retaliation. Rote as a one of the defendants caused counsel to transfer the case to Federal Court based on diversity.

37. The case was assigned to Judge Robert Kugler. A Motion to Compel arbitration was filed by Rote and NDT. While under consideration, Sandra Ware met with a Kugler law clerk, a classmate of Ware's, passing to him in person the Jones Transcript.

38. In response, Kugler dismissed defendant's access to federal court with prejudice sending the case back to New Jersey State Court, denying NDT and Rote their constitutional right to access federal court.

39. Plaintiff asserts that Kugler's decision to not put Rote's counsel on notice to cure any defect in the transfer of the case to Federal Court as being a highly unusual act and self-evident as to prejudice and intent to deny Rote due process. **(The Second Act)**.

40. Rote responded by sending a letter to Kugler notifying him of the ex-parte contact by Ware and Zweizig, publishing to Kugler the forensic results of a hard drive Zweizig returned on his last showing showing the existence of programming Zweizig denied having and a litany of child incest porn downloaded by Zweizig using a peer to peer program registered in his name.

41. In response, Kugler issued an order to show cause (Kugler Show Cause) as to why Rote should not be held in contempt for Rote exercising his right of free speech to a judge who had divested the court of jurisdiction.

42. Rote filed a complaint with the Second Circuit.

43. A hearing on the show cause order was heard in Camden Federal Court at great cost to Rote and Kugler attempted to convince the U.S. Attorneys Office to pursue criminal contempt

for Rote sending the letter. **(The Third Act)**.The United States refused to do so and the hearing

was concluded with a finding that Rote did not engage in criminal contempt. Ware and the clerk

have never denied the ex-parte handing off of the Jones Transcript.

44. Kugler abused his office and after the hearing requested Rote's counsel join Kugler in

chambers where he asked Rote to withdraw his complaint. Rote conveyed to counsel that he

refused to do so and counsel advised Rote to leave the state while he still could.

45. The case proceeded to state court. Zweizig was a subject to a contract that mandated

arbitration. The contract was evaluated for conscionability and upheld. Zweizig was compelled

to arbitration in Portland Oregon. Zweizig filed the Jones and Kugler transcripts with New Jersey

State Court. However, in this case the State Court was not amused.

46. In 2006 arbitration was commenced with Rote and his company as Claimant and Zweizig

as Respondent. The arbitration was delayed substantially as Zweizig lost counsel on four

separate occasions.

47. In 2009 opposing counsel Linda Marshall appeared on behalf of Zweizig. Marshall

submitted to arbitrator William Crow both the Jones and Kugler transcripts asking the arbitrator

requesting that Crow deny Rote and NDT their constitutional right of due process.

48. Crow cited both the Jones and Kugler transcripts and at one point made snide comments

to Rote about his communications. The Opinion and award reflects that same bias.

49. In May 2010 the first of ten (10) arbitration hearings began. Approximately half way

through those hearing Rote became aware that Crow and Marshall had been partners at the law

firm of Miller Nash at the same time and for some 14 years. Neither Crow nor Marshall

disclosed their prior partner relationship.

50. Upon raising the failure to disclose the prior partnership relationship, arbitrator Crow immediately resigned. Marshall told him that the providence of Crow's independence rested solely with the Arbitration Service of Portland (ASP) and Crow re-engaged.

51. The ASP determined that Zweizig would be prejudiced if Crow resigned.

52. Upon rejoining, arbitrator Crow summarily ignored the evidence put on by employer NDT and found in favor of Zweizig, awarding him $67,500 in back pay, $5,000 on an alleged post-employment letter (which was not in evidence) to a third party and $1,000 for a post-employment unemployment compensation challenge by NDT. **(The Fourth Act).**

53. The evidence ignored by Crow included a hard copy and digital copy of an email terminating Zweizig three weeks before his complaint to the ODJ, the testimony of three witnesses placing the date of notice of termination to three weeks before the complaint, the testimony and reports by three forensic experts (including one of Zweizig's experts) opining that the digital email terminating Zweizig was evaluated and confirmed as having been sent three weeks before Zweizig's complaint.

54. Crow also ignored all evidence of damage caused by Zweizig including emails from Zweizig claiming that there was no program code to process and report on 100,000 bits of data daily, the testimony of the expert hired to search and then recreate the programs, the testimony of three witnesses that knew the programming existed and was withheld by Zweizig and the testimony of three computer forensic experts (one of them Zweizig's) who opined that the programming was in fact found on a hard drive reformatted by Zweizig on his last day.

55. Crow ignored more than 1,000 documents and the testimony of ten witnesses. Ethics complaints were filed with the Oregon State Bar association for Marshall instructing Zweizig

destroy evidence, for aiding and abetting in his perjury, for lying to Crow and also as to Crow for violating a multitude of ethical mandates.

56. The complaints went to Crow who was then the Chair of the Disciplinary Board for the Oregon State Bar and they went no further. **(The Fifth Act).**

57. NDT filed a Motion to Vacate the arbitration award citing Crow's failure to disclose, his recusal, his re-engagement, his incapacity and complete refusal to consider the evidence of NDT as well as Zweizig's own evidence refuting Crow's narrative.

58. In 2012, Magistrate Paul Papak considered the arguments and while acknowledging Crow's failure to disclose his conflict, lack of independence, apparent lack of capacity and intentional disregard of evidence nonetheless refused to vacate the award. In spite of refusing to consider the merits of the arbitration, Papak did insert knowingly false facts, most prominent of which was a statement that only a hard copy of the email terminating Zweizig was in evidence before Crow, when in fact the was not true and the forensic reports evaluating the digital email was also in evidence with the Motion to Vacate. **(The Sixth Act).**

59. Magistrate Papak's refusal to vacate the arbitration, given the evidence, is self-evident as to prejudice and Papak's intent to deny Rote and NDT due process.

60. Papak was influenced by the Jones and Kugler transcripts as well a complaint filed against Crow (which Marshall noted in her declaration in support of confirming the award) and consciously decided to deny Rote due process.

61. In February 2017, Rote met with Crow and Crow admitted that he did not have the stamina to look at the evidence, had referred Marshall to Zweizig and had used a draft opinion written for him by Marshall. **(The Seventh Act).**

62. Immediately thereafter Rote filed a Motion to Set Aside the Judgment and Papak refused to consider the evidence. **(The Eighth Act)**.Rote filed a complaint against Papak thereafter.

63.  From 2009 through June 2014, NDT and Rote litigated against Silicon Valley Bank ("SVB") in Arapahoe County Colorado, after SVB had instructed executives of a software company owned by SVB to break into NDT's servers and destroy software. SVB's intent was to use the shutdown it caused to extort a settlement in lawsuit filed by NDT for breach of contract and fraud.

64. The dispute was over some $50,000 due Touchstar Software Company on a $250,000 contract, SVB wanting to keep the $200,000 received and take back the software in its entirety. Rote refused to capitulate to the extortion and successfully adjudicated an Emergency Motion to enjoin SVB (and Touchstar) from further destruction and to reinstall the software. NDT prevailed in Denver Federal Court and SVB refused to comply.

65. CEO Rote and former CEO of Touchstar both testified at trial that Touchstar had fraudulently provisioned the hardware and software rendering close to half the software licenses unusable and effectively engaging in a fraudulent bait and switch tactic. NDT sought more than $1.6 Million in damages.

66. On Information and belief, Weishaupl received a copy of the Jones and Kugler transcript and a call from Papak asking Weishaupl to find against Rote. Although Weishaupl had found in favor of NDT during Summary Judgment, the court found that the product delivered by Touchstar and SVB that rendered half the licenses unusable was not a **material** breach of the contract. **(The Ninth Act)**.

67. In 2015, plaintiff Rote began writing articles and posts about the arbitration and litigation with SVB. The evidence from the arbitration represented a bulk of the source material. Rote

specifically addressed the evidence the arbitrator ignored. Plaintiff also wrote similar articles about the SVB litigation.

68. Zweizig found the articles and blog posts about the arbitration defamatory and demanded the blog (which contained much more than the Zweizig posts) be taken down. Rote refused to do so, but offered Zweizig anonymity and redaction.

69. In Retaliation, opposing counsel Joel Christiansen and Linda Marshall spun a blog posts on whether arbitrators are above the law, reached out to deputy clerk of The Hon. Robert E. Jones and conveyed that Rote was going to attend a dinner in the Judges honor and assault him.

70. A short time thereafter Zweizig filed a lawsuit against Rote and former employer NDT in the U.S. District Court of Oregon. Almost immediately opposing counsel filed the Jones and Kugler transcripts asking the court for bias and to deny Rote his rights of free speech and due process. **(The Tenth Act)**.Counsel would file the Jones and Kugler transcripts two more times in the 3:15-CV-2401 lawsuit, each time asking the court for bias, to punish Rote for his free speech and to deny Rote his due process.

71. The Hon. Marco Hernandez did deny Rote due process. Zweizig's claims in the 3:15 lawsuit were asserted as employment claims for retaliation, not for defamation, for publishing the details of the arbitration. As such the employment claims are subject to Zweizig's contract dispute resolution clause requiring notice, mediation and arbitration. Zweizig failed to comply with the contract.

72. Under Oregon law the court has the limited jurisdiction to decide (1) if there is a contract requiring arbitration and (2) if the claims are the type of claims subject to arbitration, such as employment claims. Zweizig is seeking damages under post-employment retaliation claims, the very type of claim he was awarded damages in during the arbitration.

73. And yet the court decided to deny Rote's Motion to Compel, using waiver and non-signatory theories, arguments well beyond the threshold questions before the court under Oregon law. **(The Eleventh Act)**.The court also denied Rote's counterclaim for defamation even though Rote had raised factual defenses to the anti-SLAPP filed by Christiansen on behalf of Zweizig. Under the 9th Circuit Courts guidance, anti-SLAPP Motions are to be treated as Motions For Summary Judgment and discovery afforded when there are factual defenses, as in the case where the content of Christiansen's statements to the deputy clerk are challenged and refuted by other evidence. **(The Twelfth Act)**.

74. In 2016 Rote filed a defamation lawsuit against Christiansen and Marshall in Clackamas County Court for statements made alleging Rote intended to attack Judge Jones. Rote became aware of the nefarious contact (but not content) with the deputy clerk since the U.S. Marshals Service got involved and interviewed Rote and Rote's attorney.

75. Judge Robert Herndon presided over the short duration of the case.

76. The Oregon State Bar Professional Liability Fund hired counsel to represent Marshall and Christiansen and counsel filed an anti-SLAPP Motion to Strike Rote's claims arguing the articles and posts were publications on a topic of public interest and in a public forum, also concealing the content of the statements made to Judge Jones deputy clerk. **(The Thirteenth Act)**.

77. During the course of the anti-SLAPP Rote argued that the claims made by opposing counsel had to be dangerous enough for the U.S. Marshals Service to investigate and for the Marshals to place Rote on the watch list at the U.S. District Court of Oregon. Rote offered further evidence that plaintiff has refused to reveal the content of the statements, but had done so in the 3:15CV2401 lawsuit, opposing counsel Christiansen now having admitted that he and Marshall contacted the deputy clerk.

PAGE 14. COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

78. Rote asked the Herndon court to accept as evidence that the statements while still concealed must have been material enough for the U.S. Marshals to take action. Opposing counsel hired by the PLF also knowing concealed the content of the statements made by Marshall and Christiansen and misrepresented the content to the court.

79. Opposing counsel hired by the PLF, with full knowledge of Carol Bernick, filed the Jones and Kugler transcripts, asked for and received prejudicial favor denying Rote his constitutionally right of due process. The Herndon court granted the anti-SLAPP. **(The Fourteenth Act)**. Rote appealed.

80. On appeal, Rote argued the clear weight of inference given the fraudulent concealment of the statements published to the deputy clerk. Herndon acknowledged that he was influenced by the Jones and Kugler transcripts and that was asserted in the appeal.

81. After the Clackamas County anti-SLAPP was granted and before the appeal, Rote acquired further evidence from the U.S. Marshals Service via subpoena and FOIA request. The content of the statements made to the deputy clerk, recorded by the deputy clerk and provided to the U.S. Marshals Service, showed that Christiansen had engaged in perjury in his federal declaration in support of the anti-SLAPP Motion and that counsel in the Clackamas County case had also engaged in perjury.

82. An Ethics complaint was filed against Christiansen and Marshall with evidence of his perjury in his declaration and as compared to the U.S. Marshals evidence showing highly defamatory statements made about Rote, statements concealed by Christiansen. The Oregon State Bar took no action for violation of Oregon Rules of Professional Conduct sections 3.3 to 3.5. The Oregon State Bar aided and abetted Christiansen and Marshall in their efforts to deny Rote his right of due process. **(The Fifteenth Act)**.

83. The Herndon court refused to consider the U.S. Marshals Evidence while the anti-SLAPP was under appeal. The court further refused to consider the new evidence after appeal, ignoring Oregon law allowing a Motion to Set Aside the Judgment for fraud upon the court and threatening Rote with enhanced legal fees. Herndon denied Rote due process. On information and belief, Paul Papak contacted Herndon requesting that Herndon deny Rote his right of due process. **(The Sixteenth Act)**.

84. By the time Rote filed his appeal with the Oregon Court of Appeals on the Clackamas Court granting the anti-SLAPP, James Egan, former counsel for Zweizig, was on the Oregon Court of Appeals. Rote filed an affidavit on Egan and further sent an email requesting Egan not get involved with the appeal. That request was ignored.

85. On information and belief, James Egan engaged other members of the Oregon Court of Appeals to Affirm Without Opinion (AWOP) the Clackamas County Courts decision and to deny Rote his right of due process. **(The Seventeenth Act)**. Egan is now Chief Justice of the Oregon Court of Appeals and is seeking appointment as a Federal Magistrate.

86. The Hernandez court (3:15-Cv-2401) further decided just before trial to deny Rote's source material supporting his blog posts, the most important of which was the forensic reports. Plaintiff counsel Christiansen filed a Motion in Limine specifically identifying exhibits Rote sought to present to the jury and which Christiansen described, authenticated and argued supported Rote's posts describing Zweizig's cybercrime, copyright violations, destruction of programming and the downloading and disseminating of child porn using a peer to peer program registered to Zweizig. Until that Motion in Limine was granted, Zweizig had only argued the publishing of the forensic reports were a violation of a protective order. After the Motion in

Limine was granted, Zweizig took a position the blog posts were untruthful. **(The Eighteenth Act)**.

87. Judge Marco Hernandez intentionally made objectively unreasonable ruling to punish Rote for his free speech and to deny his right of due process. Out of the more than 60 exhibits Rote sought to introduce at trial, the court permitted only five (5), and did not permit the forensic reports even for impeachment of Zweizig's testimony.

88. In 2018 Rote filed a new lawsuit in Clackamas County seeking again damages for Defamation and IIED for the false and defamatory statements published to Judge Jones deputy clerk, against former PLF counsel for fraudulent concealment of the true statements made to the deputy clerk, for malpractice against Rote counsel for failing to file a Motion to Compel arbitration before answering, against the PLF for refusing to cover the malpractice. The PLF's refusal to cover was based on retaliatory animus for publishing a series of articles critical of the PLF endorsement of perjury and for covering attorneys engaged in retaliatory acts outside the scope of coverage. **(The Nineteenth Act).**

89. Rote also penned a number of articles questioning the propriety of the PLF enjoying tax free status while failing to act in the public's interest as originally conceived, for growing to a financial powerhouse that pays out less in claims as a % of premiums than independent carries, for being a captive insurance company and not qualifying for tax exempt status and for concealing what appears to be $2 Million a year in undisclosed payments to outside parties.

90. Rote also renewed his Motion to Set Aside the Judgment for legal fees in the Clackamas anti-SLAPP Motion. Judge Susie Norby was assigned to the case. Rote submitted the U.S. Marshals evidence showing clearly that Christiansen's representation of the statements made to the clerk were tantamount to perjury, that the anti-SLAPP decision should be void as a matter of

law and the opportunity for legal fees therefore foreclosed. Norby ignored the evidence and AWOPd the earlier decision. On information and belief, Susie Norby is actively seeking an appointment to Court of Appeals, met with James Egan to garner his support for that position and denied Rote's Motion as an act of solidarity and as requested by Egan. **(The Twentieth Act)**.

91. Also, during this time Rote filed a Motion to Correct the record in the 3:15-CV-2401 case now under appeal. The court transcript was missing two statements made by opposing counsel Christiansen at closing, the most important of which was a false claim that Rote was making $4 Million a year and the jury should award Zweizig's damages accordingly. While that statement was one of 17 prejudicial statements, for which the court did not intervene **(The Twenty First Act)**, Rote asked the court reporter Nancy Walker to check and make sure she did not make an error. Walker maintained she did not make an error.

92. Plaintiff Rote immediately issued litigation hold emails to Walker and the court clerk and offered to pay Walker for copies of the recordings. Walker refused.

93. Rote added Nancy Walker as a defendant in the 2018 Clackamas lawsuit claiming intent to defraud and to create a knowingly false document. Rote subpoenaed the recordings. Walker refused to respond or object to the subpoena.

94. The United States intervened by an untimely removal of the Clackamas County action to the U.S. District Court of Oregon. The United States argues that the action against Walker was an action against the United States, even though Walker claims personal property ownership of the tapes. Rote objected to the removal and Judge Michael Mosman decided that the court would retain jurisdiction. **(The Twenty Second Act)**.

95. Rote again issues subpoenas to Walker and the Clerk of the Court. The United States responded by arguing the subpoenas should be quashed, the proper process requiring the court to examine exclusively the recordings to determine if the court record needed to be corrected. Judge Hernandez did quash the subpoenas. **(The Twenty Third Act).**The Motion to Correct the record is still pending.

96. After the subpoenas were quashed Rote went to the Court Clerk and filed a form requesting copies of the trial recordings from the court's digital recording system. The clerk could not find any record of the recordings and called Jennifer Padget, deputy clerk for Judge Hernandez. Although plaintiff subpoenaed and put a litigation hold on the recordings, said recordings were destroyed. **(The Twenty Fourth Act).**Who ordered the recordings destroyed is not known and Padgett will not confirm who ordered her to destroy the recordings, but there is a trail.

97. On information and belief, court reporter Nancy Walker's trial recordings were also destroyed. The United States has not denied that Walker destroyed her digital recordings. **(The Twenty Fifth Act)**.

98. Defendants Christiansen & Marshall (Defamation and IIED), Brandsness (malpractice and breach of contract), The United States, Kalmanson and PLF (and related parties) all filed Motions to Dismiss in 3:19-CV-00082-MO. The court granted all Motions but Christiansen and Marshall. Brandsness and the PLF were also dismissed, the court having found that there was no written contract. The written contract was provided as Doc #18-1. **(The Twenty Sixth Act)**.

99. The Intentional Tort and Related Claims against the United States as Nancy Walker were dismissed with prejudice, the court knowing that Walker had destroyed her digital recordings. **(The Twenty Seventh Act).**

100. There are other cases that could be incorporated in this complaint. For example, Zweizig filed a fraudulent transfer case against Rote personally on the NDT judgment. NDT had been destroyed by the very cybercrime that he and SVB engaged in. Without a scintilla of evidence that case went on for four years, Summary Judgment denied three times. Marshall admitted during the trial the case was used to try to extort payment by Rote. Judge Hernandez found in favor of Rote, the claims not only being time-barred but also that there was no evidence to support the claims. Still Rote was subjected to the high cost of litigation for four years. **(The Twenty Eight Act).**

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. §1983**
**First Amendment Rights**
**Against All Defendants**

101. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 100 as though fully set forth herein.

102. Under the Oregon Constitution, Article I, Section 8, every person shall be responsible for the abuse of the right to free speech. Rote was exercising his constitutional right to freedom of speech by blogging, tweeting and otherwise publishing about matters of public concern and national debate, among them being the efficacy of arbitration, failures of the judiciary to reign in arbitrators, the right to file a complaint to a body administering judicial conduct without fear of repercussion and persecution, to disclose ex-parte and other forms of misconduct by court staff when found, to publish the results of ongoing litigation and to question the court's aadopting a poster child who disseminates child porn.

103. The acts of defendants described herein were taken under color of federal and state law.

104. Defendants' acts violated Rote's rights under the First Amendment of the United States Constitution, made applicable to the State of Oregon through the 14th Amendment.

105. Defendants' acts were designed to punish and discourage the open publication of critiques of the court and court staff, among those cited including but not limited to ex-parte contact between Sandra Ware and Kugler's law clerk, the publishing of a letter therein, placing and allowing the Jones and Kugler transcripts to taint proceedings, endorsed acts of perjury, concealment of perjury that serves the interest of court players, financial malfeasance, the destruction of trial recordings, etc.

106. Defendants' constitutional abuses and violations were and are directly caused by policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendants.

107. Defendants' acts were also intended to prolong litigation as a direct and proximate form of persecution.

108. As a direct and proximate result of defendants' unlawful acts, Rote has suffered economic damages and harm to his reputation.

109. As a direct and proximate result of defendants' unlawful acts, Rote has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

110. Rote seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

111. Defendants' conduct toward Rote demonstrated a wanton, reckless or callous indifference to the constitutional rights of Rote, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. §1983

**As Applied Due Process Violations – Fifth and Fourteenth Amendments**
**Against All Defendants**

112. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 111 as though fully set forth herein.

113. 42 U.S.C. § 1983 and the Due Process Clause of the Fifth Amendment and Fourteenth Amendment, provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

114. At a minimum, a person who will be deprived of a right is entitled to a fair decision-making process by an impartial decision-maker. Defendants' acts were by intent and design to deprive Rote an impartial decision-maker, the self-evident acts presenting most often as an abuse of judicial discretion.

115. The Jones and Kugler transcripts were filed and encouraged to be filed in the described litigation more than ten times in six legal actions and in three states with the intent of encouraging if not demanding judicial bias. The judicial actors identified as defendants in this action embraced the persecution without regard to the truth, facts, law or consideration that their acts aided and abetted the dissemination of child porn.

116. Among the abuses by the court include refusal to vacate an arbitration award stemming from the arbitrators acknowledgement of inability to perform the duties demanded, refusal to permit discovery, refusal to allow evidence, refusal to compel arbitration, refusal to recuse (Papak, Hernandez and Portland Division), refusal to sanction, collusion in the misconduct of opposing counsel, aiding and abetting cybercrime, editing and destroying a trial record, all of which was intended to punish the plaintiff for the exercise of his constitutional right to free speech.

117. The acts of defendants when measured against applicable law, res judicata, unrefuted facts, that acts objectively unreasonable and unsupported, most often presented as a commitment to ignoring proffered evidence.

118. The acts of defendants described herein were taken under color of federal and state law.

119. Defendants' acts violated Rote's rights under the Fifth Amendment of the United States Constitution, made applicable to the State of Oregon and Colorado through the 14th Amendment.

120. Defendants' constitutional abuses and violations were and are directly caused by policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendants including: (a) the failure to adequately and properly train and supervise Federal and State employees; (b) the failure to properly and adequately monitor and discipline Federal and State employees; (c) the overt and tacit encouragement and sanctioning of, and failure to rectify, the practices that led to the Fifth and Fourteenth Amendment violations here.

121. As a direct and proximate result of defendants' unlawful acts, Rote has suffered economic damages and suffered harm to his reputation.

122. As a direct and proximate result of defendants' unlawful acts, Rote has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

123. Rote seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

124. Defendants' conduct toward Rote demonstrated a wanton, reckless or callous indifference to the constitutional rights of Rote, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. §1985
### Conspiracy to Violate Civil Rights
### Against All Defendants

125.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 124 as though fully set forth herein.

126. 42 U.S.C.§ 1985 claims arise from: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

127. The defendants knowingly and willing published Rote for his public speech, denied Rote critical elements of due process influencing or deciding the outcome of litigation to which Rote was a party, by defendants objectively unreasonable bases in law and fact nefariously masquerading as judicial deference, with the intent of hurting Rote to whom they also ascribe a separate socio-economic class and as a business owner.

128. Any single act stands out as an abuse of judicial discretion. The sum of the acts presents a prolonged and calculated pattern of persecution among the defendants as conspirators with the intent of causing economic harm to Rote, singling Rote out to punish his speech and to deny him due process.

129. The collusion between actors named as defendants in this case and counsel not named as defendants is best defined by counsel filing the Jones transcript, Kugler Show Cause Order and

Kugler transcript some ten times in six actions in three different states, each time a criminal request for the abuse of a public office and each time not sanctioned by the court.

130. Opposing counsel first filed the Jones transcript ex-parte in 2004 in Camden, N.J.; then the Jones and Kugler transcripts in 2005-2006 in N.J State Court; then again in the 2010 arbitration; then the Jones and Kugler transcripts and Crow complaint in 2012 with the confirmation; then the Kugler and Jones Transcript in 2014 (3:14-CV-406); then the Kugler and Jones transcript in the 3:15-CV-2401 case some three times; then in the 2016 defamation case against Christiansen and Marshall, this time filed by opposing counsel hired by and deemed filed by the Oregon State Bar PLF and Carol Bernick; then finally also filed in the Oregon Court of Appeals resulting in an AWOP. The AWOP was an act of support for the courts civil rights violations, solicited and secured by James Egan.

131. Officers of the court have through these filings requested and, up on refiling, confirmed that Rote has and will be denied due process.

132. In state court, Crow, Weishaupl, Herndon, Egan and Norbie conspired with Kugler, Papak and opposing counsel to punish speech about the court, to deny Rote due process and to deny him an independent triar. Carol Bernick aided and abetted in the dissemination of the Jones and Kugler transcripts and in the acts violating Rote's free speech and right to due process. Rote put Bernick on notice about the perjury and acts of PLF counsel and Bernick endorsed those acts.

133. In Federal court, Papak, Kugler, Bernick and Williams aided and abetted in punishing Rote's speech and denying Rote dues process by actively engaging with opposing counsel in strategy, motion and advocacy, by effecting the quashing of subpoenas, by destroying recordings, by assisting in the cover up of inaccurate trial transcripts and through multiple acts of intimidation and suppression of evidence.

134. The state and federal actors and conspirator defendants implicate their respective employer agencies and departments given the representation that they were acting under the color of the law administered by those employers.

135. Those employers failed to act even when Rote called for recusal of one or more of them when bias appeared probable or imminent. Those employer agencies and departments chose to not act to protect the civil rights of plaintiff Rote.

136. As a direct and proximate result of defendants' unlawful acts, Rote has suffered economic damages and harm to his reputation.

137. As a direct and proximate result of defendants' unlawful acts, Rote has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

138. Rote seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

139. Defendants' conduct toward Rote demonstrated a wanton, reckless or callous indifference to the constitutional rights of Rote, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. §2201**
**Declaratory and Equitable Relief**
**Against The Unites States, The State of Oregon, The State of Colorado, Named**
**Branches, Agencies and Department**

140. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 139 as though fully set forth herein.

141. As described herein, Rote has established a violation of his First, Fifth and Fourteenth Amendment Rights and requests a Declaration thereof.

142. Rote hereby requests that the United States, State of Oregon and State of Colorado, and its respective employees and officials take immediate, voluntary steps to adhere to the requirements of the First, Fourth, and Fourteenth Amendment to the United States Constitution by effectuating the following:

a)  The United States and States and its officials shall change and/or supplement any written policy, official practice, or training it gives to its employee, to ensure that those engaging in free speech or publishing a complaint are treated fairly and with respect and are not discriminated against or retaliated against because of their protected speech.

b)  To the United States, open an investigation on Hon. Robert Kugler, Hon. Paul Papak and U.S. Attorney Billy Williams to determine the lengths to which they have engaged in civil rights violations, publish the content of the inquiry and results, sanction, suspend and take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of the United States.

c)  To the States, open an investigation on Hon. Elizabeth Weishaupl, Hon. James Egan, Hon. Robert Herndon and Hon. Susie Norby to determine the lengths to which they have engaged in civil rights violations, publish the content of the inquiry and results, sanction, suspend, remove, disbar and take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of those States and the United States.

d) To the State of Oregon, open an investigation on William B. Crow to determine the lengths to which he engaged in civil rights violations, publish the content of the inquiry and results, review the Disciplinary Board action taken while Crow was Chair of that body, amend the Oregon Arbitration Act to impose malpractice liability and coverage on arbitrators in Oregon and take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of Oregon and the United States.

e) To the State of Oregon, open an investigation on the Oregon State Bar Association, the Professional Liability Fund and Carol Bernick to determine the lengths to which they engaged in civil rights violations, publish the content of the inquiry and results, audit the financial records of the PLF to determine if there has been malfeasance in any form (including bribes and influence to the judiciary and/or legislature), sanction, suspend, remove, disbar and to take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of Oregon and the United States.

f) To the State of Oregon, to remove the PLF from the umbrella of the Oregon Department of Justice, to convert the PLF to a for profit corporation subject to federal and state income tax as any other captive insurance company would be, to do so in an orderly manner and to take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of Oregon and the United States.

g) To the State of Oregon, open an investigation on Oregon attorneys who have filed the Kugler and Jones transcripts, or aided and abetted in the filing of these transcripts, to determine the lengths to which they engaged in civil rights violations, publish the

content of the inquiry and results, to sanction, suspend, disbar and take other steps

necessary to preserve the integrity of the litigation process and to preserve the rights

of the citizens of Oregon and the United.

143. Depending upon the response to Rote's requests, described in ¶¶ 140-141 above, and

other information that is learned during the course of the litigation, he will seek injunctive relief

and ask the federal court to order Defendants United States, State of Oregon and State of

Colorado and its employees and officials to make the necessary changes to their policies and

official practices, to prevent further egregious violations of the constitutional rights.  To the

extent it may be necessary, Rote also will request the federal court to retain continuing

jurisdiction and oversight over the operation of the State of Oregon in the respects described in

¶¶ 140-141 above, to ensure that the changes are implemented in a timely and effective manner.

144. Rote also requests an award his attorney fees and litigation expenses/costs against

defendants pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff Rote prays for judgment against defendants as follows:

1.   Economic damages in the form of consequential damages and prejudgment interest in an

amount to be determined at trial, but not less than $10 Million;

2.   Noneconomic damages in an amount to be determined at trial, but not less than

$50,000,000;

3.   All available equitable relief and damages in amounts to be determined at trial, consistent

with the claims above against defendants;

4.   Punitive damages consistent with the claims above against defendants in amounts to be

determined at trial;

5.    Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness

fees and expenses, consistent with the claims above against defendants; and

6.    Grant such other relief as is just and proper.


PLAINTIFF HEREBY REQUESTS A JURY TRIAL.


Dated:  April 30, 2019

s/ *Timothy C. Rote*
Timothy C. Rote
*Pro Se* Plaintiff

PAGE 30.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS